**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **LAI CHEN, individually and derivatively on behalf of AEROTRANSCENDENT INC.,**<br>*Plaintiff,*<br><br>v.<br><br>**MU MENG and YUAN MENG,**<br>*Defendants,*<br><br>and<br><br>**AEROTRANSCENDENT INC.,**<br>*Nominal Defendant.* | **Case No.: 1:26-cv-3197** |

## COMPLAINT

COMES NOW Plaintiff Lai Chen, individually and derivatively on behalf of AeroTranscendent Inc., by counsel, and for his Complaint against Defendants Mu Meng and Yuan Meng (collectively, the "Mengs"), states as follows:

## NATURE OF ACTION

1. This action arises out of a coordinated effort by Defendants Mu Meng and Yuan Meng to force their co-founder and fellow shareholder, Plaintiff Lai Chen, out of AeroTranscendent Inc. ("TA US") and the broader Transcendent Aerospace business, and to expropriate Mr. Chen's ownership interest without compensation. Mr. Chen, Mu Meng, and Yuan Meng each own one-third of TA US, a Delaware corporation that serves as the United States operating company of the business.

2. On January 30, 2026, the Mengs issued a signed shareholder communication (the "Communication") demanding that each shareholder contribute $200,000 and declaring that any shareholder who declined would be treated as having decided to "step away from the company entirely, including the associated equity position." No governing document of TA US authorizes the forfeiture, dilution, or impairment of a shareholder's equity interest for declining to contribute additional capital. The purported forfeiture is void and unenforceable.

3. The Mengs have also withheld TA US's financial records from Mr. Chen despite his repeated requests, and have caused TA US to transfer and disburse substantial corporate funds, including approximately $1.8 million routed into TA US's United States bank accounts and then paid out to the Mengs, entities they own or control, and unidentified payees, without board authorization or any disclosed corporate purpose.

4. Mr. Chen brings this action in two capacities. He sues individually to obtain a declaration that the January 30, 2026 forfeiture is void and that his ownership interest in TA US remains intact, to redress the breaches of the fiduciary duties of Mu Meng and Yuan Meng as directors and officers of TA US owed to him, and to compel inspection of TA US's books and records. He sues derivatively, on behalf of TA US, to redress the Mengs' diversion and waste of TA US's funds and business opportunities.

## PARTIES

5. Plaintiff Lai Chen ("Mr. Chen") is a citizen of the United States and a resident of the Commonwealth of Virginia. Mr. Chen is a co-founder of the Transcendent Aerospace business and holds a one-third (1/3) equity interest in TA US. He asserts the direct claims in his own right as a stockholder and the derivative claims on behalf of TA US.

6. Defendant Mu Meng is, upon information and belief, a citizen of the State of Illinois. Mu Meng is a co-founder of the business and a director and officer of TA US.

7. Defendant Yuan Meng is, upon information and belief, a citizen of the State of California. Yuan Meng is a co-founder of the business and a director and officer of TA US.

8. Nominal Defendant AeroTranscendent Inc. ("TA US") is a corporation organized under the laws of the State of Delaware with, upon information and belief, its principal place of business in the State of Illinois, at 700 N. Peace Road, DeKalb, Illinois. TA US is the United States operating company of the Transcendent Aerospace business. TA US is named as a nominal defendant because Mr. Chen asserts claims on its behalf; its board of directors is controlled by Mu Meng and Yuan Meng.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Complete diversity of citizenship exists because Mr. Chen is a citizen of Virginia; Mu Meng is a citizen of Illinois and Yuan Meng is a citizen of California; and AeroTranscendent Inc. is a citizen of Delaware and Illinois. The amount in controversy exceeds $75,000, exclusive of interest and costs, including the value of the ownership interest the Defendants threaten to forfeit and the corporate funds at issue.

10. This Court has personal jurisdiction over Defendant Mu Meng pursuant to Fed. R. Civ. P. 4(k)(1)(A), Va. Code Ann. § 8.01-328.1(A)(1), (A)(3), and (A)(4), and U.S. Const. amend. XIV, § 1.

11. Mu Meng has known at all relevant times, including upon execution of the Subscription Agreement alleged below, that Mr. Chen resides in Virginia, and he has agreed to the use of Mr. Chen's Virginia address for notices and communications to Mr. Chen.

12. As alleged more fully below, Mu Meng addressed and directed to Mr. Chen in Virginia the January 30, 2026 Communication, demanding that Mr. Chen contribute $200,000 on pain of forfeiting his equity position, together with the purported capital call and the related communications that preceded and followed it.

13. From 2022 through 2024, Mu Meng regularly and knowingly directed business communications to Mr. Chen in Virginia while Mr. Chen, when present in the United States, performed his executive duties for the business from his Virginia residence, and in or about 2023 Mu Meng transacted business in Virginia through the Structural Design engagement alleged below.

14. Mr. Chen's claims arise out of and relate to these Virginia-directed contacts, which were expressly aimed at Mr. Chen in Virginia, and the brunt of the resulting injury, the threatened expropriation of a Virginia resident's ownership interest, has been and will be felt by Mr. Chen in Virginia.

15. This Court has personal jurisdiction over Defendant Yuan Meng pursuant to Fed. R. Civ. P. 4(k)(1)(A), Va. Code Ann. § 8.01-328.1, and U.S. Const. amend. XIV, § 1.

16. Yuan Meng likewise has known at all relevant times that Mr. Chen resides in Virginia; he, too, is a party to the Subscription Agreement alleged below designating Mr. Chen's Virginia address for notices, and, as alleged below, he regularly communicated with Mr. Chen in Virginia concerning the business from 2022 through 2024.

17. Upon information and belief, Yuan Meng jointly conceived, authorized, and ratified the January 30, 2026 forfeiture ultimatum, which was issued for the benefit of both Mengs, recites Yuan Meng's own alleged shareholder advances, and purportedly speaks on behalf of the shareholders and management collectively. The Virginia-directed acts of Mu Meng in furtherance of the Mengs' common scheme are further attributable to Yuan Meng for jurisdictional purposes.

18. This Court has personal jurisdiction over Nominal Defendant AeroTranscendent Inc. pursuant to Fed. R. Civ. P. 4(k)(1)(A), Va. Code Ann. § 8.01-328.1(B), and U.S. Const. amend. XIV, § 1. TA US directed the Communication to its stockholder, Mr. Chen, in Virginia, and, as alleged below, the business operated in part from Virginia through Mr. Chen from 2022 through 2024.

19. TA US is, in any event, joined solely as a nominal defendant as the entity on whose behalf Mr. Chen asserts the derivative claims in this action.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Mr. Chen's claims occurred in this District. Among other things, the January 30, 2026 forfeiture demand was directed to and received by Mr. Chen on a computer or computer network in Virginia; Mr. Chen transmitted his demands for recognition of his interest and for production of records from this District; and Mr. Chen suffered injury to his ownership interest in this District.

21. This District is, moreover, a convenient and appropriate forum: Mr. Chen litigates in his home forum; both individual Defendants reside in the United States and are

subject to process here; and the funds at issue moved into and out of United States bank accounts, the records of which are located in the United States.

## FACTS

### A. The Parties and the Business

22. The Transcendent Aerospace business designs, manufactures, assembles, and conducts research and development on aircraft and aircraft parts through a group of related companies located in the United States, Hong Kong, the British Virgin Islands, and the People's Republic of China.

23. Mr. Chen, Mu Meng, and Yuan Meng are the co-founders of the Transcendent Aerospace business. From 2022 until May 2024, Mr. Chen served as an executive director of the group's Hong Kong company, Transcendent Aerospace (Hong Kong) Limited ("TAHK"), and as Chief Executive Officer of the group's production company in the People's Republic of China.

24. From 2022 through 2024, when present in the United States, Mr. Chen performed his executive duties for the business from his residence in Virginia, using computers and computer networks located in Virginia. Throughout that period, Mu Meng and Yuan Meng each knew that Mr. Chen resided in Virginia and regularly directed business communications to him there.

25. In or about 2023, Mu Meng, acting in his capacity as an officer and director of TA US, contacted, met with, and negotiated a contract with Structural Design & Analysis, Inc. ("Structural Design"), a software development company located in Sterling, Virginia that specializes in aircraft software. Those communications resulted in the purchase of software services from Structural Design in connection with a redesign of the business's software.

26. AeroTranscendent Inc. ("TA US") is the company through which the Transcendent Aerospace business conducts its operations in the United States. TA US maintains the business's United States bank accounts, receives funds transferred into the United States for the business, and contracts with United States vendors on the business's behalf.

27. TA US is a Delaware corporation owned one-third each by Mr. Chen, Mu Meng, and Yuan Meng.

28. Mr. Chen, Mu Meng, and Yuan Meng are each parties to a Subscription Agreement dated October 26, 2022, in which the parties designated and agreed to use Mr. Chen's Virginia address for notices and communications to Mr. Chen.

29. Mu Meng and Yuan Meng are directors and officers of TA US and control its board of directors.

**B. Mr. Chen's Removal and the Denial of Records**

30. In or about May 2024, the Mengs convened a meeting at which Mr. Chen was removed from his executive positions with TAHK.

31. While Mr. Chen stepped down from his operational role with TAHK in September 2024, he remains a director of TA US, and he has never transferred, relinquished, or forfeited his ownership interest in TA US or any other company in the Transcendent Aerospace business.

32. Since his departure, Mr. Chen has repeatedly requested TA US's financial records, including its K-1 tax schedules, trial balances, general ledgers, and bank statements.

33. Each request was ignored or deflected; on at least one occasion, Mu Meng attributed the delay to the company's accountant having suffered health issues and being unable to continue service.

34. To this day, TA US has never provided Mr. Chen the K-1 tax schedules for tax years 2024 and 2025, notwithstanding his requests.

35. TA US has also abandoned the basic forms of corporate governance. TA US's Bylaws require that a meeting of stockholders be held annually for the election of directors, within the earlier of six months after the end of TA US's fiscal year or fifteen months after its last annual meeting. Upon information and belief, TA US has held only one meeting of its stockholders, in or about July 2020, in the six years since its formation, and it has issued no notice of any annual or special meeting of stockholders since. *See* 8 Del. C. § 211.

**C. The January 30, 2026 Forfeiture Ultimatum**

36. On January 30, 2026, Mu Meng issued the signed Communication, addressed and directed to Mr. Chen in Virginia. Mr. Chen received the Communication at his Virginia residence. *See* Exhibit 1 (January 30, 2026 Shareholder Communication and January 31, 2026 Transmittal Email).

37. The Communication stated that the business had exhausted its available cash, that the group's China operations were being sustained through $200,000 personally advanced by Yuan Meng, and that TA US was being sustained through $42,000 personally advanced by Mu Meng in addition to $61,148.70 in unpaid wages, and it demanded that each shareholder contribute $200,000.

38. The Communication stated that if a shareholder declined to contribute, "it would be reasonable to treat this as a decision to step away from the company entirely, including the associated equity position, so that the remaining shareholders may proceed without ambiguity," and demanded a response within fifteen days.

39. On February 2, 2026, Mr. Chen responded in writing, rejecting the ultimatum, stating that he was "not in a position to agree to any forfeiture or 'stepping away' from [his] equity position," and again requesting TA US's audited financial statements and bank statements. He noted that it was the third time he had made such a request. *See* Exhibit 2 (Mr. Chen's February 2, 2026 Written Objection).

40. No provision of TA US's bylaws or any other governing document authorizes the forfeiture, reduction, or dilution of a shareholder's equity interest for declining to contribute additional capital. TA US's Bylaws, which Mr. Chen has produced, contain no provision authorizing capital calls, assessments upon shares, or the forfeiture of a stockholder's shares. *See* Exhibit 3 (TA US Bylaws).

**D. The Diversion of TA US's Funds**

41. Based on TA US's bank transaction records, approximately $1.8 million was transferred into TA US's United States bank accounts from TAHK during 2024. *See* Exhibit 4 (2024 Bank Transaction Summary).

42. TA US's public website represents that TA US operates "two US offices located in Illinois and Georgia" and "a state-of-the-art facility in Asia," and that "since making our debut at Sun 'n Fun 2024, we've successfully sold over 100 units." *See* Exhibit 6 (TA US Website).

43. During the same period, Mu Meng and Yuan Meng caused TA US to disburse those and other corporate funds to individuals and entities whose relationship to TA US's operations has not been disclosed.

44. Namely, between January and August 2024, TA US disbursed approximately $295,080 in recurring payments to a single individual identified only as "Jeff".

45. Further, throughout 2024, TA US disbursed approximately $256,333 and $23,992 in recurring monthly payments designated only by transaction numbers.

46. Between January 2024 and December 2024, TA US incurred approximately $108,591 in credit-card charges for which no supporting documentation has been provided.

47. In or about July and November 2024, TA US paid approximately $100,000, in two $50,000 installments, to "China Avion Service" under undisclosed terms; in or about August 2024, TA US paid approximately $135,000 for a "UAV/Piper" purchase; in or about July 2024, TA US paid approximately $58,500 for roof replacement, although TA US owns no real property; and in or about June 2024, TA US paid $3,298.85 to a Hong Kong registered agent from TA US's United States account.

48. Upon information and belief, TA US has employed Lilian Meng, the daughter of Mu Meng, as its Director of Communications. Mr. Chen, a director of TA US, was never informed of her employment or compensation, and no board resolution authorized either.

49. Mr. Chen first received TA US's 2024 bank statements in or about the spring of 2025, in connection with the preparation of his personal tax returns. In or about the fourth quarter of 2025, Mr. Chen learned that the Mengs had registered new businesses in the People's Republic of China with the same partners as the Transcendent Aerospace business

but excluding Mr. Chen, and, upon studying the bank statements in detail, he identified the irregular transactions described above. In early 2026, Mr. Chen requested supporting documentation from the Mengs for tax purposes; his request was denied.

50. Mr. Chen is aware of no board resolution, disclosure, or documentation authorizing or supporting these disbursements. They cannot be reconciled with the January 30, 2026 Communication's claim that the business had "exhausted its available cash," and they provide substantial grounds to suspect that TA US's funds were misused for the benefit of Mu Meng, Yuan Meng, and entities they own or control. TA US has never explained how a business that received approximately $1.8 million from TAHK in 2024 and publicly reports having sold over 100 units since 2024 had, one year later, exhausted its available cash to the point that the Mengs demanded $200,000 from each shareholder.

**E. The Competing Entities**

51. While still serving as directors of TA US and other companies in the Transcendent Aerospace business, Mu Meng and Yuan Meng participated in the formation of at least three entities that operate in the same aviation and aerospace sector as the Transcendent Aerospace business and that exclude Mr. Chen entirely: Hong Kong TianYu JingCai ChuangXin Limited; Zhuhai TianYu JingCai ChuangXin Aviation Consulting Partnership; and Shenzhen YunJie ZhiZao KeJi Limited. Upon information and belief, the Mengs have diverted funds, assets, and business opportunities of the Transcendent Aerospace business, including TA US, to these competing entities.

**F. Demand and Injury**

52. On or about April 14, 2026, Mr. Chen, through counsel, transmitted a written demand to the Mengs identifying the foregoing matters, rejecting the January 30, 2026

forfeiture, and demanding recognition of his ownership interest and the production of records. The Defendants did not comply. *See* Exhibit 5 (April 14, 2026 Demand Letter).

53. As a direct and proximate result of the Defendants' conduct, Mr. Chen faces the threatened forfeiture of his one-third ownership interest in TA US, has been denied the information to which he is entitled as a stockholder, and AeroTranscendent Inc. has been damaged by the diversion and waste of its funds and business opportunities.

**COUNT I**
**DECLARATORY JUDGMENT (28 U.S.C. §§ 2201 and 2202)**
**(Against Mu Meng, Yuan Meng, and Nominal Defendant AeroTranscendent Inc.)**

54. Mr. Chen incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

55. An actual and justiciable controversy exists between Mr. Chen and the Defendants concerning the validity of the January 30, 2026 Communication and whether Mr. Chen's one-third ownership interest in TA US remains intact.

56. The January 30, 2026 Communication purports to treat any shareholder who declines to contribute $200,000 as having forfeited his "associated equity position."

57. Mr. Chen is entitled to a declaration that: (a) the January 30, 2026 Communication is void and unenforceable to the extent it purports to forfeit, reduce, dilute, or impair any shareholder's equity interest; (b) Mr. Chen's refusal to contribute the demanded capital does not and cannot divest him of any ownership interest in TA US; and (c) Mr. Chen's one-third ownership interest in TA US remains fully intact.

58. A judicial declaration is necessary and appropriate to resolve the parties' controversy and to prevent the Defendants from acting upon the void forfeiture.

**<u>COUNT II</u>**
**BREACH OF FIDUCIARY DUTY (DIRECT)**
**(Against Mu Meng and Yuan Meng)**

59. Mr. Chen incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

60. As directors and officers of TA US, a Delaware corporation, Mu Meng and Yuan Meng owe fiduciary duties of loyalty, good faith, and care to TA US and to its stockholders, including Mr. Chen. *See Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1939).

61. A stockholder may sue directly for breach of fiduciary duty where he has suffered harm independent of any harm to the corporation and would himself receive the benefit of any recovery. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).

62. Through the January 30, 2026 Communication, Mu Meng and Yuan Meng sought to compel Mr. Chen, on pain of forfeiting his one-third interest in TA US, to contribute $200,000, and declared that his refusal would be treated as a relinquishment of his equity. This conduct singled out Mr. Chen's shares for forfeiture while the shares of Mu Meng and Yuan Meng stood in no jeopardy, and it impaired Mr. Chen's individual ownership interest and his rights as a stockholder. The injury is to Mr. Chen individually, not to the corporation.

63. Mu Meng and Yuan Meng further breached the duties of loyalty and care they owe Mr. Chen by withholding from him, as a stockholder, the financial information and records necessary to evaluate the company's affairs and protect his interest.

64. Mu Meng and Yuan Meng stood on both sides of the conduct challenged in this Count and acted to advance their own interests at Mr. Chen's expense; their conduct is

therefore subject to, and cannot satisfy, the entire-fairness standard. *See Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983).

65. As a direct and proximate result of these breaches, Mr. Chen has been injured and is entitled to direct and compensatory damages in an amount to be proven at trial, believed to exceed $1,500,000, post-judgment interest, and all such other relief as this Court deems just and appropriate. The Mengs' conduct described herein was undertaken in bad faith, and Mr. Chen is further entitled to recover his reasonable attorneys' fees under the bad-faith exception to the American Rule.

**COUNT III**
**BREACH OF FIDUCIARY DUTY (DERIVATIVE)**
**(Derivatively on Behalf of AeroTranscendent Inc., Against Mu Meng and Yuan Meng)**

66. Plaintiff incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

67. Mr. Chen brings this Count derivatively, on behalf of AeroTranscendent Inc., to redress harm inflicted on TA US by Mu Meng and Yuan Meng.

68. Mr. Chen is, and at all relevant times has been, a stockholder of TA US, including at the time of the conduct complained of, and will fairly and adequately represent the interests of TA US and its stockholders.

69. On or about April 14, 2026, Mr. Chen, through counsel, transmitted a written demand to the Mengs identifying the foregoing matters, rejecting the January 30, 2026 forfeiture, and demanding recognition of his ownership interest and the production of records. The Defendants did not comply.

70. Demand on the board of directors of TA US is excused as futile. *See* Fed. R. Civ. P. 23.1; *United Food & Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034 (Del. 2021). TA US's Bylaws provide that the Board will consist of five members. Upon information and belief, however, only three directors are in office: Mr. Chen, Mu Meng, and Yuan Meng; no additional director has been elected since TA US's only meeting of stockholders in July 2020, and the remaining seats are and have remained vacant. Mu Meng and Yuan Meng, who together constitute a majority of the directors in office, each received a material personal benefit from the transactions challenged in this Count and each faces a substantial likelihood of liability for the breaches alleged herein, and neither is capable of impartially considering a demand. Demand is therefore excused because a majority of the demand board is disqualified.

71. Mu Meng and Yuan Meng owe TA US fiduciary duties of loyalty, good faith, and care. *See Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1939).

72. Mu Meng and Yuan Meng caused TA US to transfer and disburse corporate funds for no legitimate corporate purpose, including the payments to "Jeff," the payments designated only by transaction numbers, the undocumented credit-card charges, the payment to "China Avion Service," the "UAV/Piper" payment, the payment for roof replacement on property TA US does not own, and the undisclosed employment and compensation of Mu Meng's daughter, in each case without board authorization or disclosure.

73. Mu Meng and Yuan Meng further diverted funds, assets, and business opportunities of TA US to entities they own and control that compete with the business, in breach of their duty of loyalty and the corporate-opportunity doctrine. *See Broz v. Cellular Information Systems, Inc.*, 673 A.2d 148 (Del. 1996).

74. These transactions were self-interested and were not entirely fair to TA US. *See Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983).

75. As a direct and proximate result of these breaches, TA US has been damaged, and Mu Meng and Yuan Meng are liable to TA US for the amounts wrongfully transferred and disbursed, together with disgorgement and pre- and post-judgment interest. Because this action seeks to confer a substantial benefit upon TA US, Mr. Chen is further entitled to an award of his reasonable attorneys' fees and expenses under Delaware's common corporate benefit doctrine. *See Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989).

**COUNT IV**
**INSPECTION OF BOOKS AND RECORDS (8 Del. C. § 220)**
**(Against AeroTranscendent Inc., Mu Meng, and Yuan Meng)**

76. Mr. Chen incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

77. As a one-third stockholder of TA US, Mr. Chen has the right to inspect the books and records of TA US for a proper purpose. *See* 8 Del. C. § 220.

78. On April 14, 2026, Mr. Chen, through counsel, sent a written demand to TA US and its directors for the inspection and production of TA US's books and records. TA US neither responded nor produced any records. Thereafter, on or around August 10, 2026, Mr. Chen served on TA US, through its registered agent in Delaware, a written demand under oath satisfying the form and manner requirements of 8 Del. C. § 220(b), stating with reasonable particularity Mr. Chen's proper purposes and the books and records demanded, and accompanied by a power of attorney authorizing counsel to act on Mr. Chen's behalf. TA US has failed to respond to the demand within five business days and has produced no records.

79. The investigation of suspected mismanagement, self-dealing, and waste is a proper purpose for inspection, requiring only a credible basis from which the Court may infer the possibility of wrongdoing. *See Seinfeld v. Verizon Communications, Inc.*, 909 A.2d 117 (Del. 2006).

80. The unexplained transfers and disbursements described above, and the Defendants' refusal to provide any documentation or explanation despite Mr. Chen's repeated requests, supply more than a credible basis to infer mismanagement and self-dealing and establish Mr. Chen's proper purpose. The undisclosed employment of a director's family member by TA US supplies an independent credible basis to investigate related-party transactions and compensation.

81. Mr. Chen is entitled to an order compelling TA US to permit the inspection and copying of its books and records.

**COUNT V**
**ACCOUNTING**
**(Against AeroTranscendent Inc., Mu Meng, and Yuan Meng)**

82. Mr. Chen incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

83. The Defendants have exclusive possession and control of TA US's books, records, and financial information. By virtue of that control, and of the fiduciary relationship between the Mengs and Mr. Chen and between the Mengs and TA US, the Defendants are obligated to account for their receipt, management, and disbursement of TA US's funds.

84. The unexplained transfers and disbursements described above, including approximately $1.8 million received from TAHK during 2024 and the disbursements

identified in this Complaint, cannot be verified or reconciled without a complete accounting, and Mr. Chen has no adequate remedy at law.

85. Mr. Chen is entitled to a full and complete accounting of all receipts, disbursements, and transfers of TA US from January 1, 2024 through the present.

**COUNT VI**
**CONVERSION**
**(Derivative, Against Mu Meng and Yuan Meng, on Behalf of AeroTranscendent Inc.)**

86. Mr. Chen incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

87. At all relevant times, the funds in TA US's bank accounts, including the approximately $1.8 million transferred from TAHK during 2024, were the property of TA US.

88. TA US had the immediate right to possess and control those funds, which were specific, identifiable sums received into and held in TA US's United States bank accounts.

89. Without authorization, disclosure, or any legitimate corporate purpose, Mu Meng and Yuan Meng exercised dominion and control over TA US's funds, taking, transferring, and disbursing them for their own benefit and the benefit of entities they own or control, through the disbursements described above.

90. The Mengs' exercise of dominion and control over TA US's funds was wrongful, was inconsistent with and in denial of TA US's rights in the funds, and was accomplished without any claim of right.

91. The Mengs' conversion depleted TA US and directly and proportionately diminished the value of its shares, including the one-third interest held by Mr. Chen, a Virginia resident; that diminution in value was and continues to be suffered in Virginia.

92. As a direct and proximate result, TA US has been damaged in an amount to be proven at trial, and Mu Meng and Yuan Meng are liable to TA US for the amounts converted, together with pre- and post-judgment interest and exemplary damages to the extent permitted by law.

## COUNT VII
## TEMPORARY AND PERMANENT INJUNCTIVE RELIEF
## (Against Mu Meng and Yuan Meng)

93. Mr. Chen incorporates and realleges each of the foregoing paragraphs as if fully set forth herein.

94. Mr. Chen is likely to succeed on the merits of his claims. The purported forfeiture is unsupported by any governing document of TA US and is void under Delaware law, the Mengs' claim that the business had exhausted its cash within a year of receiving $1.8 million and reporting the sale of over 100 units is unexplained, and the Mengs' self-interested transfers of corporate funds cannot withstand entire-fairness review.

95. Absent injunctive relief, Mr. Chen will suffer irreparable harm. His one-third ownership interest in a closely held corporation is a unique property interest whose forfeiture, cancellation, or dilution cannot adequately be remedied by money damages, and the accompanying loss of his stockholder voting, governance, and information rights is likewise irreparable. In addition, the Defendants, by their own account, have exhausted the companies'

available cash, and their continuing unauthorized transfers of TA US's funds threaten to render any judgment uncollectible.

96. The balance of the equities tips sharply in Mr. Chen's favor because the injunction sought is prohibitory: it merely preserves the status quo and requires the Defendants to refrain from unlawful conduct pending adjudication, and the public interest favors the protection of shareholder property and governance rights. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994); *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003).

97. Mr. Chen is entitled to temporary, preliminary, and permanent injunctive relief restraining the Defendants, and all persons acting in concert with them, from implementing, enforcing, or acting upon the purported forfeiture set forth in the January 30, 2026 Communication, and from transferring, cancelling, diluting, encumbering, or otherwise impairing Mr. Chen's shares or equity interest in TA US.

WHEREFORE, Plaintiff Lai Chen, individually and derivatively on behalf of AeroTranscendent Inc., respectfully requests that this Court enter judgment in his favor and award the following relief:

(a) On Count I, a declaration that the January 30, 2026 Communication is void and unenforceable to the extent it purports to forfeit, reduce, dilute, or impair any shareholder's equity interest, and that Mr. Chen's one-third ownership interest in AeroTranscendent Inc. remains fully intact;

(b) On Count II, direct and compensatory damages for breach of fiduciary duty;

(c) On Count III, judgment in favor of AeroTranscendent Inc. and against Mu Meng and Yuan Meng for the amounts wrongfully transferred and disbursed, together with disgorgement;

(d) On Count IV, an order compelling the inspection and production of the books and records of AeroTranscendent Inc.;

(e) On Count V, a full accounting of the finances of AeroTranscendent Inc.;

(f) On Count VI, judgment in favor of AeroTranscendent Inc. and against Mu Meng and Yuan Meng for the amounts converted, together with interest and exemplary damages to the extent permitted by law;

(g) On Count VII, temporary, preliminary, and permanent injunctive relief restraining the Defendants from acting upon the purported forfeiture and from impairing Mr. Chen's equity interest in TA US;

(h) Pre-judgment and post-judgment interest at the applicable rate;

(i) Mr. Chen's costs and, to the extent permitted by law, his attorneys' fees, including under the common corporate benefit doctrine and the bad-faith exception to the American Rule; and

(j) Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,
LAI CHEN
By Counsel

Clifford Clapp, Esq., VSB No. 85388
Donna Zhang, Esq., VSB No. 101748
Fox & Moghul
10509 Judicial Drive, Suite 300
Fairfax, Virginia 22030
Telephone: (703) 652-8301
Facsimile: (703) 956-1813
Clapp@moghullaw.com
Zhang@moghullaw.com
*Counsel for Plaintiff*